Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLAYNE BERGER and DARREN TODD, on behalf of themselves individually and all others similarly situated, | Case No. 5:25-cv-00926 |
| *Plaintiffs*, | **CLASS ACTION COMPLAINT** **DEMAND FOR JURY TRIAL** |
| v. | |
| WW INTERNATIONAL, INC., | |
| *Defendant*. | |

# Table of Contents

I.    Introduction.............................................................................................................. 1

II.   Parties..................................................................................................................... 4

III.  Jurisdiction and Venue............................................................................................ 4

IV.   Facts....................................................................................................................... 5

    A.    Defendant's fake sales and discounts........................................................... 5

    B.    Defendant's advertisements are unfair, deceptive, and unlawful. .................. 15

    C.    Defendant's advertisements harm consumers................................................ 17

    D.    Plaintiffs were misled by Defendant's misrepresentations. ............................ 18

    E.    Defendant breached its contract with and warranties to Ms. Berger,
          Ms. Todd, and the putative class. ................................................................. 20

    F.    No adequate remedy at law. ........................................................................ 21

V.    Class Action Allegations. ........................................................................................ 22

VI.   Claims. ................................................................................................................... 24

    First Cause of Action: Violation of California's False Advertising Law Bus.
          & Prof. Code §§ 17500 & 17501 et. seq. ..................................................... 24

    Second Cause of Action: Violation of California's Consumer Legal Remedies
          Act ............................................................................................................. 26

    Third Cause of Action: Violation of California's Unfair Competition Law ............. 29

    Fourth Cause of Action: Breach of Contract ....................................................... 31

    Fifth Cause of Action: Breach of Express Warranty............................................. 32

    Sixth Cause of Action: Quasi-Contract/Unjust Enrichment................................. 33

    Seventh Cause of Action: Negligent Misrepresentation ...................................... 34

    Eighth Cause of Action: Intentional Misrepresentation ....................................... 35

VII.  Relief. .................................................................................................................... 36

VIII. Demand for Jury Trial............................................................................................. 37

## I.      Introduction.

1.      Advertised "sales" are important to consumers.  Consumers are more likely to sign up for a service or make a purchase if they think that they are getting a good deal. Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else.

2.      While there is nothing wrong with a legitimate sale, a fake one—that is, one with made-up expirations, made up regular prices, and made-up discounts—is deceptive and illegal.

3.      Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading.  Cal. Bus. & Prof. Code    § 17500.  This includes statements falsely suggesting that something is on sale, when it actually is not.

4.      Moreover, section 17501 of California's False Advertising Law provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising.  Cal. Bus. & Prof. Code § 17501.  So, in addition to generally prohibiting untrue and misleading fake discounts, it also specifically prohibits this particular flavor of fake discount (where the advertised former price is not the prevailing price during the specified timeframe).

5.      In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."  Cal. Civ. Code § 1770(a)(9), (13).

6.      Moreover, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price.  16 C.F.R. § 233.1.

7.      As numerous courts have found, fake sales violate these laws.  They also violate California's general prohibition on unlawful, unfair, and deceptive business practices.  *See* Cal. Bus. & Prof. Code § 17200.

8.      Defendant WW International, Inc. ("Defendant" or "Weight Watchers") markets and sells weight-loss-related subscriptions.  The subscriptions are sold online through the Weight Watchers website, www.weightwatchers.com ("Weight Watcher Memberships" or "Memberships").

9.      On its website, Defendant lists purported "Limited Time" discounts for first-time customers who sign up for more than one month ("New Multimonth Memberships").  The advertisements include, *"Hurry, offer ends today,"* "Ends today: X% off," or "Hurry, offer ends tomorrow!  X% off."  Examples are shown below:





10.     Customers sign up, thinking that these signup discounts will not last.  They agree to multimonth commitments thinking that signup sale will end soon.  But the offers do not actually end.  The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all.  Nor are the purported discounts limited time—quite the opposite; signup discounts for New Multimonth Memberships are constantly available.

11.     As described in greater detail below, Ms. Berger and Ms. Todd signed up for New Multimonth Memberships through Defendant's website, www.weightwatchers.com.  When they signed up, Defendant advertised a limited-time sale on New Multimonth Memberships.  Defendant represented that the New Multimonth Memberships that Ms. Berger and Ms. Todd purchased were being offered at a steep discount from the purported regular signup prices for these memberships.  And based on Defendant's representations, Ms. Berger and Ms. Todd believed that they were signing up for new memberships whose regular signup prices and market values were the list prices that Defendant advertised, that they were receiving substantial discounts off the regular

signup price for those memberships, and that the opportunity to get those discounts were time-limited.  These reasonable beliefs are what caused Ms. Berger and Ms. Todd to enroll in Defendant's Memberships when they did.

12.     The representations that Ms. Berger and Ms. Todd relied on, however, were not true. The signup discounts for the New Multimonth Memberships are ongoing, not time-limited.  They are always available.  Had Defendant been truthful, Ms. Berger and Ms. Todd and other consumers like them would not have purchased these new Memberships, or would have paid less for them.

13.     Plaintiffs bring this case for themselves and the other customers who purchased New Multimonth Memberships at a purported discount.

## II.    Parties.

14.     Plaintiff Marlayne Berger is domiciled in Banning, California.

15.     Plaintiff Darren Todd is domiciled in Fortuna, California.

16.     The proposed class includes citizens of every state.

17.     Defendant WW International, Inc., is a New York corporation with its principal place of business at 675 Avenue of the Americas New York, NY 10010.

## III.   Jurisdiction and Venue.

18.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

19.     The Court has personal jurisdiction over Defendant because Defendant sold Weight Watchers Memberships to consumers in California.

20.     Venue is proper under 28 U.S.C. § 1391(b)(1), 28 U.S.C. § 1391(c)(2), and 28 U.S.C. § 1391(d) because Defendant is subject to personal jurisdiction in this District with respect to this action, and would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold Weight Watchers Memberships to consumers in California and this District.  Venue is also proper under 28

U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District.

**IV.     Facts.**

    **A.     Defendant's fake sales and discounts.**

    21.     Defendant WW International, Inc., distributes, markets, and sells weight loss-related subscriptions.  Defendant sells its Weight Watchers Memberships directly to consumers through its website, www.weightwatchers.com.

    22.     Defendant's website sells multimonth Memberships.  That is, they sell memberships for more than one month (e.g. 3 months, 6 months, 10 months, and annual memberships).  When selling New Multimonth Memberships, Defendant creates the false impression that consumers are regular signup prices for New Multimonth Memberships are higher than they truly are.

    23.     At any given time, on its website, Defendant advertises that it has a limited time signup discount that is ending soon on New Multimonth Memberships.  Even though in truth these discounts run in perpetuity, Defendant prominently claims the offers "end[s] in [X] days" or "end[] soon!"  And it advertises these discounts extensively. Example screenshots are provided on the following pages:

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15    *Captured March 8, 2022*

16
17
18
19
20
21
22
23
24
25
26



27    *Captured on December 21, 2022*

28



*Captured on February 17, 2023*



*Captured on August 11, 2023*



*Captured on January 8, 2024*



*Captured April 10, 2024*

*Captured May 2, 2024*

*Captured September 27, 2024*

24.     Defendant represents that these advertised signup discounts on New Multimonth Memberships will only be available for a limited time.  That is, that if a consumer signs up now, they will get a discount, but if they sign up later, the discount will no longer be available.  But in reality, these signup discounts continue indefinitely.

25.     For example, on December 4, 2024, Defendant advertised a purportedly time-limited "Cyber Week" sale that would end the next day.  The sale included 60% off for signing up for a 10-month membership.

 

*Captured on December 4, 2024*

26.     However, on the next day, December 5, 2024, after the time-limited sale was supposed to have ended, Defendant advertised another purported 60% off sale.



*Captured on December 5, 2024*

27.    A few days later, on December 9, 2024, the same sale persisted, purportedly ending the next day, with the same 10-month signup pricing:





*Captured on December 9, 2024*

28.    To confirm that Defendant always offers signup discounts off of purported regular Membership plan prices for its New Multimonth Memberships, Plaintiffs' counsel performed an investigation of Defendant's advertising practices using the Internet Archive's Wayback Machine (available at www.archive.org).[1]  That investigation confirms that Defendant's sales have persisted continuously since at least January 12, 2022.  For example, 58 randomly selected screenshots of Defendant's website,

---

[1] The Internet Archive, available at archive.org, is a library that archives web pages. https://archive.org/about/

www.weightwatchers.com, were collected from the Internet Archive's Wayback Machine, from the 2022-2025 period. One hundred percent of the 58 randomly selected screenshots of Defendant's website, captured on the Wayback Machine and directly on the website, advertised a limited-time sale on New Multimonth Memberships.

29.    Reasonable consumers do not realize the fake nature of the sale. It is not apparent from merely purchasing the Memberships, because the sale appears to be a bona fide sale. Consumers do not have any reason to go back to the website day after day to discover that there is still a sale. And, even a consumer who occasionally checks the website would reasonably believe that there happened to be another sale. Discovering Defendant's deception required extensive mining of internet archives, which revealed that the sale is not limited in time, that the discounts are fake, and that the advertised regular prices are fake.

30.    In addition, Defendant's website lists fake regular prices (that is, prices reflecting the listed monthly rate for signing up for a New Multimonth Membership) and fake discounts from those prices for New Multimonth Memberships.

31.    For example, on September 6, 2024, Defendant advertised a purported limited time sale:



*Captured September 6, 2024*

1   32.    As part of this discount, Defendant listed purported regular rates in

2   strikethrough font.  For example, Defendant represented that the cost of a new

3   multimonth Weight Watchers annual membership had a regular price of $23 per month

4   and a discount price of $11 per month that would purportedly "[s]ave $164 over 12

5   months" due to this limited time sale.



*Captured September 6, 2024*

16   33.    Similarly, on December 9, 2024, Defendant again advertised a purportedly

17   limited time sale.  As part of this discount, Defendant listed purported regular rates in

18   strikethrough font.



*Captured December 9, 2024*

34.    But the truth is, these discounts for New Multimonth Memberships are always available.  The regular price to sign up for a new multimonth WW membership plan is always discounted.  Consumers do not receive a true discount.  They receive a much lower discount, or no discount at all.

35.    Using these tactics, Defendant leads reasonable consumers to believe that they will get a discount if they purchase a New Multimonth Membership during the "limited time" promotion.  In other words, it leads reasonable consumers to believe that if they buy now, they will get new membership that usually costs (and is worth) $X at a discounted, lower monthly rate $Y.  For example, in the example above, consumers believe that if they sign up now, they will receive a 10-month membership at a 60% discount from what the same 10-month membership would cost outside of the sale.  This creates a sense of urgency: buy now, and you will receive something worth more than you pay for it; wait, and you will pay more for the same thing later.

36.    Based on Defendant's advertisements, reasonable consumers reasonably believe that the prices displayed in "strikethrough font" (e.g., "$23") are Defendant's regular prices and former prices (that is, the monthly rate at which New Multimonth

Memberships were actually offered for sale before the limited-time offer went into effect). In other words, reasonable consumers reasonably believe that the listed strikethrough prices Defendant advertises represent the amount that consumers formerly had to pay to purchase that New Multimonth Membership, before the limited-time sale began, and will again have to pay for Defendant's Memberships when the sale ends. Said differently, reasonable consumers reasonably believe that, prior to the supposedly limited-time sale, consumers buying from Defendant had to pay the list price to purchase a New Multimonth Membership of the corresponding type (e.g. an annual, 10-month, or 3-month membership), and did not have the opportunity to get a discount from that list price.

37. Reasonable consumers also reasonably believe that the listed strikethrough prices Defendant advertises represent the true market value of New Multimonth Memberships of that type, and are the prevailing prices for New Multimonth Membership of that type; and that they are receiving reductions from those listed regular prices in the amounts advertised for purchasing the specific plans. In truth, however, Defendant persistently offers the discounts off the purported regular prices for each of the New Multimonth Memberships that it advertises. As a result, everything about Defendant's price and purported discount advertising is false. The "sale" prices Defendant advertises are not actually Defendant's regular or former prices for those Membership plans, or the prevailing prices for those plans. And, the listed strikethrough prices do not represent the true market value for those Memberships, because those Membership are always available for less than that, and customers did not have to formerly pay that amount to get those Memberships. The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all. Nor are the purported discounts limited-time—quite the opposite, they are always available.

**B.    Defendant's advertisements are unfair, deceptive, and unlawful.**

38.     Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading.  Cal. Bus. & Prof. Code    § 17500.  This includes statements falsely suggesting that something is on sale, when it actually is not.

39.     Moreover, section 17501 of California's False Advertising Law specifically provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising.  Cal. Bus. & Prof. Code § 17501.

40.     In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."  Cal. Civ. Code § 1770(a)(9), (13).

41.     In addition, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price.  16 C.F.R. § 233.1.  They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case.  16 C.F.R. § 233.1.

42.     And finally, California's unfair competition law bans unlawful, unfair, and deceptive business practices.  *See* Cal. Bus. & Prof. Code § 17200.

43.     Here, as described in detail above, Defendant makes untrue and misleading statements about its prices.  Defendant advertises regular prices that are not its true regular prices, or its former prices, and were not the prevailing market price in the three months immediately preceding the advertisement.  In addition, Defendant advertised goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices and/or market values without the intent to sell goods having those former prices and/or market values.  Defendant made false or

misleading statements of fact concerning the reasons for, existence of, and amounts of price reductions, including the existence of steep discounts, and the amounts of price reductions resulting from those discounts.  And Defendant engaged in unlawful, unfair, and deceptive business practices.

### C.   Defendant's advertisements harm consumers.

44.    Based on Defendant's advertisements, reasonable consumers would expect that the 3-month listed signup prices that Defendant advertises are the former prices at which members could sign up for those New Multimonth Memberships before the time-limited discount was introduced.

45.    Reasonable consumers would also expect that, if they sign up for a New Multimonth Membership during the sale, they will receive a Membership whose regular price and/or market value is the advertised list price and that they will receive the advertised discount from the regular purchase price.

46.    In addition, consumers are more likely to sign up for the New Multimonth Membership if they believe that the membership is on sale and that they are getting a Membership with a higher regular price and/or market value at a substantial discount.

47.    Consumers that are presented with discounts are substantially more likely to make the purchase.  "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[2]  And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[3]

---

[2] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.
[3] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

48. Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to make a purchase.[4]

49. Thus, Defendant's advertisements harm consumers by inducing them to make purchases based on false information. In addition, by this same mechanism, Defendant's advertisements artificially increase consumer demand for Defendant's New Multimonth Memberships. This puts upward pressure on the prices that Defendant can charge for its New Multimonth Memberships. As a result, Defendant can charge a price premium for its Memberships, that it would not be able to charge absent the misrepresentations described above. So, due to Defendant's misrepresentations, Plaintiffs and the class paid more for the Memberships they bought than they otherwise would have.

**D.    Plaintiffs were misled by Defendant's misrepresentations.**

50. On January 2, 2025, Ms. Berger signed up for a 10-month Weight Watchers Membership through Defendant's website. She signed up while living in Banning, California. When Ms. Berger signed up, Defendant's website represented that the 10-month Weight Watchers Membership had a regular price of $23.00 per month, but that she was receiving a limited-time discount and would be charged $10 a month for the first ten months. This price was presented on the product page in strikethrough font ("$23.00") next to a purported discount price of $10.00 per month, for the first ten months.

51. Ms. Berger read and relied on Defendant's representations on the website, specifically that it typically cost $23.00 a month to sign up for 10 months, but that she was being offered a discount for a limited time. For example, when making her purchase, she relied on the strikethrough monthly price of "$23.00," the discounted monthly price of

---

[4] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400% increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with countdown timer).

"$10.00," and that she would receive a monthly discount of $13.00 for ten months if she bought during the sale.  She also relied on the representations that the sale was time-limited and expiring soon.

52.    On September 30, 2024, Ms. Todd signed up for a 3-month Weight Watchers Membership through Defendant's website.  She signed up while living in Fortuna, California.  When Ms. Todd signed up, Defendant's website represented that the 3-month Weight Watchers Membership had a regular price of $23.00 per month, but that she was receiving a limited-time discount and would be charged $15 a month for the first three months.  This price was presented on the product page in strikethrough font ("$23.00") next to a purported discount price of $15.00 per month, for the first three months.

53.    Ms. Todd read and relied on Defendant's representations on the website, specifically that the Memberships were being offered at a discount for a limited time and had the regular prices listed above.  For example, when making her purchase, she relied on the strikethrough monthly price of "$23.00," the discounted monthly price of "$15.00," and that she would receive a monthly discount of $8.00 for three months if she bought during the sale.  She also relied on the representations that the sale was time-limited and expiring soon.

54.    Based on Defendant's representations described and shown above, Ms. Berger and Ms. Todd reasonably understood that Defendant regularly (and before the promotions Defendant was advertising) sold New Multimonth Memberships (that is, the 10-month and 3-month Memberships, respectively) that they were purchasing at the published regular prices.  They further believed that these regular prices were the market value of the New Multimonth Memberships that they were buying, that they were receiving the advertised discounts as compared to the regular prices of New Multimonth Memberships, that advertised discounts were only available for a limited time (during the limited time promotion), and that New Multimonth Memberships would go back to retailing for the published regular prices when the promotion ended.  They would not

have made the purchases if they had known that the multimonth Memberships were not discounted as advertised, and that they were not receiving the advertised discounts.

55.    In reality, as explained above, Defendant's products, including the New Multimonth Memberships that Ms. Berger and Ms. Todd purchased, are always available at a discounted price off of the purported regular prices. In other words, Defendant did not regularly sign consumers up for the New Multimonth Memberships that Ms. Berger and Ms. Todd purchased at the purported regular price, and the New Multimonth Memberships were not discounted as advertised. Plus, the sale was not limited time.

56.    Plaintiffs face an imminent threat of future harm. Plaintiffs would sign up for Defendant's New Multimonth Memberships again in the future if they could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the New Multimonth Memberships, and that its discounts were truthful. But without an injunction, Plaintiffs have no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive. For example, while they could watch Defendant's website for a sale on the day that it is supposed to end to see if the sale is permanent, doing so could result in them missing out on the sale (e.g., if the sale is actually limited in time, and not permanent). Accordingly, Plaintiffs are unable to rely on Defendant's advertising in the future, and so cannot purchase the New Multimonth Memberships they would like to purchase.

### E.    Defendant breached its contract with and warranties to Ms. Berger, Ms. Todd, and the putative class.

57.    When Ms. Berger, Ms. Todd, and other members of the putative class, purchased and paid for the Weight Watchers Memberships that they bought as described above, they accepted offers that Defendant made, and thus, a contract was formed each time that they made purchases. Each offer was to provide New Multimonth Memberships having a particular listed regular signup price and market value, and to

provide those New Multimonth Memberships at the discounted signup price advertised on the website.

58.    Defendant's advertisements, for example on its website, list the market value of the New Multimonth Memberships that Defendant promised to provide. Defendant agreed to provide a discount equal to the difference between the regular signup prices, and the signup prices paid by Ms. Berger, Ms. Todd and putative class members.  For example, Defendant offered to provide Ms. Todd (among other things) the Core Membership with a market value of $23.00 per month, and a discount of $8.00 off per month for the first three months.  Defendant also warranted that the regular price and market value of the Memberships Ms. Todd purchased were the advertised list price and warranted that Ms. Todd was receiving a specific discount on the Membership.

59.    The regular price and market value of the items Ms. Berger, Ms. Todd, and putative class members would receive, and the amount of the discount they would be provided off the regular price of those items, were specific and material terms of the contract.  They were also affirmations of fact about the Memberships and a promise relating to the goods.

60.    Ms. Berger, Ms. Todd, and other members of the putative class performed their obligations under the contract by paying for the items they purchased.

61.    Defendant breached its contract by failing to provide Ms. Berger, Ms. Todd, and other members of the putative class with Memberships that have a regular price and market value equal to the regular price displayed, and by failing to provide the discount it promised.  Defendants also breached warranties for the same reasons.

### F.    No adequate remedy at law.

62.    Plaintiffs seek damages and, in the alternative, restitution.  Plaintiffs are permitted to seek equitable remedies in the alternative because they have no adequate remedy at law.

63.     A legal remedy is not adequate if it is not as certain as an equitable remedy.  The elements of Plaintiffs' equitable claims are different and do not require the same showings as Plaintiffs' legal claims.  For example, Plaintiffs' FAL claim under Section 17501 (an equitable claim) is predicated on a specific statutory provision, which prohibits advertising merchandise using a former price if that price was not the prevailing market price within the past three months.  Cal. Bus. & Prof. Code § 17501.  Plaintiffs may be able to prove these more straightforward factual elements, and thus prevail under the FAL, while not being able to prove one or more elements of their legal claims.

64.     In addition, to obtain a full refund as damages, Plaintiffs must show that the Memberships they bought have essentially no market value.  In contrast, Plaintiffs can seek restitution without making this showing.  This is because Plaintiffs purchased Memberships that they would not otherwise have purchased, but for Defendant's representations.  Obtaining a full refund at law is less certain that obtaining a refund in equity.

65.     Furthermore, the remedies at law available to Plaintiffs are not equally prompt or otherwise efficient.  The need to schedule a jury trial may result in delay.  And a jury trial will take longer, and be more expensive, than a bench trial.

66.     Finally, legal damages are inadequate to remedy the imminent threat of future harm that Plaintiffs face.  Only an injunction can remedy this threat of future harm.  Plaintiffs would purchase or consider purchasing a Membership from Defendant again in the future if they could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the Memberships, and that its time-limited discounts were truthful.  But without an injunction, Plaintiffs have no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive.  Thus, they are unable to rely on Defendant's advertising in the future, and so cannot purchase Products they would like to purchase.

V.     **Class Action Allegations.**

67.    Plaintiffs bring the asserted claims on behalf of the proposed class of:

- <u>Nationwide Class</u>: all persons who, within the applicable statute of limitations period, purchased New Multimonth Memberships advertised at a discount on Defendant's website.

- <u>California Subclass</u>: all persons who, while in the state of California and within the applicable statute of limitations period, purchased one or more New Multimonth Memberships advertised at a discount on Defendant's website.

68.    The following people are excluded from the class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

### *Numerosity & Ascertainability*

69.    The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  There are tens or hundreds of thousands of class members.

70.    Class members can be identified through Defendant's sales records and public notice.

### *Predominance of Common Questions*

71.    There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

(1) whether Defendant made false or misleading statements of fact in its advertisements;

(2) whether Defendant violated California's consumer protection statutes;

(3) whether Defendant committed a breach of contract;

(4) whether Defendant committed a breach of an express or implied warranty;

(5) damages needed to reasonably compensate Plaintiffs and the proposed class.

*Typicality & Adequacy*

72.    Plaintiffs' claims are typical of the proposed class.  Like the proposed class, Plaintiffs purchased the Weight Watchers Memberships advertised at a discount from Defendant.  There are no conflicts of interest between Plaintiffs and the class.

*Superiority*

73.    A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

**VI.    Claims.**

<u>**First Cause of Action:**</u>

**Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et. seq.**

**(By Plaintiffs and the California Subclass)**

74.    Plaintiffs incorporate each and every factual allegation set forth above.

75.    Plaintiffs bring this cause of action on behalf of themselves and members of the California Subclass.

76.    Defendant has violated sections 17500 and 17501 of the Business and Professions Code.

77.    Defendant has violated, and continues to violate, section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiffs and subclass members.

78.     As alleged more fully above, Defendant advertises former prices along with discounts.  Defendant does this, for example, by crossing out a higher price (e.g., ~~$23.00~~ per month) and displaying it next to a lower, discounted price, and stating that the discounted price for signing up for a New Multimonth Membership is only available for a limited time.  Reasonable consumers would understand prices advertised in strikethrough font from which time-limited discounts are calculated to denote "former" prices, i.e., the prices that Defendant charged for those New Multimonth Memberships before the time-limited discount went into effect.

79.     The prices advertised by Defendant are not Defendant's regular prices.  In fact, those prices are never Defendant's regular prices (i.e., the price you usually have to pay to sign up for the New Multimonth Membership in question), because there is always a heavily-advertised promotion ongoing entitling consumers to a discount for signing up for a New Multimonth Membership.  Moreover, for the same reasons, those prices were not the former prices of those Memberships.  Accordingly, Defendant's statements about the former prices of its Memberships, and its statements about its signup discounts from those former prices, were untrue and misleading.  In addition, Defendant's statements that its discounts are ending soon are false and misleading too.

80.     In addition, Defendant has violated, and continues to violate, section 17501 of the Business and Professions Code by advertising former prices that were not the prevailing market price within three months next immediately preceding the advertising. As explained above, Defendant's advertised regular prices, which reasonable consumers would understand to denote former prices, were not the prevailing market prices for signing up for those New Multimonth Memberships within three months preceding publication of the advertisement.  And Defendant's former price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former prices for signing up for those New Multimonth Memberships prevailed.

81.     Defendant's misrepresentations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on the statements when signing up for new

multimonth Weight Watchers Memberships.  Defendant's misrepresentations were a substantial factor in Plaintiffs' purchase decisions.

82.    In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to sign up for the new multimonth Weight Watcher Memberships.

83.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and the subclass.

84.    Plaintiffs and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have signed up for the New Multimonth Memberships if they had known the truth, (b) they overpaid for the New Multimonth Memberships because the Memberships were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Memberships with market values lower than the promised market values.

85.    For the claims under California's False Advertising Law, Plaintiffs seek all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiffs and the subclass as a result of Defendant's unlawful conduct.

<u>**Second Cause of Action**</u>:

**Violation of California's Consumer Legal Remedies Act**

**(By Plaintiffs and the California Subclass)**

86.    Plaintiffs incorporate each and every factual allegation set forth above.

87.    Plaintiffs bring this cause of action on behalf of themselves and members of the California Subclass.

88.    Plaintiffs and the subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

89.    Plaintiffs and the subclass have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

90.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

91.     As alleged more fully above, Defendant made and disseminated untrue and misleading statements of facts in its advertisements to subclass members.  Defendant did this by using fake regular prices, i.e., regular prices that are not the prevailing prices for signing up for New Multimonth Memberships, and by advertising fake discounts for signing up for those Memberships.

92.     Defendant violated, and continues to violate, section 1770 of the California Civil Code.

93.     Defendant violated, and continues to violate, section 1770(a)(5) of the California Civil Code by representing that Memberships offered for sale have characteristics or benefits that they do not have.  Defendant represents that the value of its Memberships is greater than it actually is by advertising inflated regular prices and fake discounts for signing up for New Multimonth Memberships.

94.     Defendant violated, and continues to violate, section 1770(a)(9) of the California Civil Code.  Defendant violates this by advertising its New Multimonth Memberships as being offered at a discount, when in fact Defendant does not intend to sell those Memberships at a discount.

95.     And Defendant violated, and continues to violate section 1770(a)(13) by making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions on its website, including by (1) misrepresenting the regular signup prices of New Multimonth Memberships on its website, (2) advertising discounts and savings that are exaggerated or nonexistent, (3) misrepresenting that the signup discounts and savings are unusually large, when in fact they are regularly available (4) misrepresenting the reason for the sale (e.g., "Cyber Week Sale," when in fact the sale is ongoing and not limited to Cyber Week).

96.    Defendant's representations were likely to deceive, and did deceive, Plaintiffs and reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

97.    Defendant's misrepresentations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on them when signing up for new multimonth Weight Watchers Memberships.  Defendant's misrepresentations were a substantial factor in Plaintiffs' purchase decisions.

98.    In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Weight Watchers Memberships.

99.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and the subclass.

100.    Plaintiffs and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have signed up for new multimonth Weight Watchers Memberships if they had known the discounts and/or regular prices were not real, (b) they overpaid for the New Multimonth Memberships because the Memberships were sold at a price premium due to the misrepresentation, and/or (c) they received products with market values lower than the promised market values.

101.    Accordingly, pursuant to California Civil Code § 1780(a)(2), Ms. Berger and Ms. Todd, on behalf of themselves and all other members of the subclass, seek injunctive relief.

102.    CLRA § 1782 NOTICE.  On March 3, 2025, a CLRA demand letter was sent on behalf of Ms. Todd to Defendant's headquarters and registered agent via certified mail (return receipt requested), that provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here.  On April 8, 2025, a CLRA demand letter was sent on behalf of Ms. Berger to Defendant's headquarters and registered agent via certified mail (return receipt requested), that provided notice of Defendant's violations of the CLRA and

1  demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices

2  alleged here.

3      103.    If Defendant does not fully correct the problem for Plaintiffs and for each

4  member of the California Subclass within 30 days of receipt of the notice letters,

5  Plaintiffs and the California Subclass will seek all monetary relief allowed under the

6  CLRA.

7      104.    Plaintiffs' CLRA venue declarations are attached.

8                          **Third Cause of Action:**

9                **Violation of California's Unfair Competition Law**

10              **(By Plaintiffs and the California Subclass)**

11      105.    Plaintiffs incorporate each and every factual allegation set forth above.

12      106.    Plaintiffs bring this cause of action on behalf of themselves and members of

13  the California Subclass.

14      107.    Defendant has violated California's Unfair Competition Law (UCL) by

15  engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three

16  prongs of the UCL).

17              *The Unlawful Prong*

18      *108.*    Defendant engaged in unlawful conduct by violating the CLRA and FAL, as

19  alleged above and incorporated here.

20              *The Deceptive Prong*

21      109.    As alleged in detail above, Defendant's representations that its New

22  Multimonth Memberships were on sale, that the sale was limited in time, that the New

23  Multimonth Memberships had a specific regular price, and that the customers were

24  receiving discounts were false and misleading.

25      110.    Defendant's representations were misleading to Plaintiffs and other

26  reasonable consumers.

27      111.    Plaintiffs relied upon Defendant's misleading representations and

28  omissions, as detailed above.

*The Unfair Prong*

112.    As alleged in detail above, Defendant committed "unfair" acts by falsely advertising that New Multimonth Memberships were on sale, that the sale was limited in time, that the Memberships had a specific regular price, and that the customers were receiving discounts for signing up.

113.    Defendant violated established public policy by violating the CLRA and FAL, as alleged above and incorporated here. The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA and FAL).

114.    The harm to Plaintiffs and the subclass greatly outweighs the public utility of Defendant's conduct. There is no public utility to misrepresenting the price of a consumer product. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumer products only injure healthy competition and harm consumers.

115.    Plaintiffs and the subclass could not have reasonably avoided this injury. As alleged above, Defendant's representations were deceptive to reasonable consumers like Plaintiffs.

116.    Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

\* \* \*

117.    For all prongs, Defendant's representations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on them when signing up for new multimonth Weight Watchers Memberships. Defendant's representations were a substantial factor in Plaintiffs' purchase decisions.

118.    In addition, subclass-wide reliance can be inferred because Defendant's representations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Weight Watchers Memberships.

119.    Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and the subclass members.

120.    Plaintiffs and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have signed up for New Multimonth Memberships if they had known the discounts and/or regular prices were not real, (b) they overpaid for the New Multimonth Memberships because the Memberships were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Memberships with market values lower than the promised market values.

121.    For the claims under California's Unfair Competition Law, Plaintiffs seek all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiffs and the subclass as a result of Defendant's unlawful conduct.

**Fourth Cause of Action:**

**Breach of Contract**

**(By Plaintiffs and the Nationwide Class)**

122.    Plaintiffs incorporate each and every factual allegation set forth above.

123.    Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class.  In the alternative, Plaintiffs brings this cause of action on behalf of themselves and the California Subclass.

124.    Plaintiffs and class members entered into contracts with Defendant when they placed orders to purchase New Multimonth Memberships on Defendant's website.

125.    The contracts provided that Plaintiffs and class members would pay Defendant for the Memberships purchased.

126.    The contracts further required that Defendant provides Plaintiffs and class members with New Multimonth Memberships that have a market value equal to the list prices displayed on the website.  They also required that Defendant provide Plaintiffs and class members with a discount equal to the difference between the price paid, and the regular prices advertised.  These were specific and material terms of the contract.

127.    The specific discounts were a specific and material term of each contract, and were displayed to Plaintiffs and class members at the time they placed their orders.

128.    Plaintiffs and class members paid Defendant for the New Multimonth Memberships they purchased, and satisfied all other conditions of their contracts.

129.    Defendant breached its contracts with Plaintiffs and class members by failing to provide New Multimonth Memberships that had a regular price, former price, and/or prevailing market value equal to the list price, and by failing to provide the promised discount.  Defendant did not provide the discount that it had promised.

130.    Plaintiffs provided Defendant with notice of this breach of contract, by mailing a notice letter to Defendant's headquarters and registered agent on March 3, 2025 and on April 8, 2025.

131.    As a direct and proximate result of Defendant's breaches, Plaintiffs and class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial**.**

132.    For the breach of contract claims, Plaintiffs seek all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiffs and the subclass as a result of Defendant's unlawful conduct.


**Fifth Cause of Action:**

**Breach of Express Warranty**

**(By Plaintiffs and the California Subclass)**

133.    Plaintiffs incorporate each and every factual allegation set forth above.

134.    Plaintiffs bring this cause of action on behalf of themselves and the California Subclass.

135.    Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of the Weight Watchers Memberships, issued material, written warranties by advertising that the New Multimonth Memberships had a prevailing market value equal

to the listed price. This was an affirmation of fact about the New Multimonth Memberships (i.e., a representation about the market value) and a promise relating to the goods.

136. This warranty was part of the basis of the bargain and Plaintiffs and members of the class relied on this warranty.

137. In fact, the Weight Watchers Memberships' stated market value for the New Multimonth Memberships was not the prevailing market value. Thus, the warranty was breached.

138. Plaintiffs provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's registered agent and headquarters on March 3, 2025 and on April 8, 2025.

139. Plaintiffs and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have signed up for New Multimonth Memberships if they had known that the warranty was false, (b) they overpaid for the New Multimonth Memberships because the Memberships were sold at a price premium due to the warranty, and/or (c) they did not receive the discounts they were promised, as warranted.

140. For their breach of express warranty claims, Plaintiffs seek all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiffs and the subclass as a result of Defendant's unlawful conduct.

**Sixth Cause of Action:**

**Quasi-Contract/Unjust Enrichment**

**(By Plaintiffs and the Nationwide Class)**

141. Plaintiffs incorporate each and every factual allegation in paragraphs 1-56, 62-73 above.

142.    Plaintiffs bring this cause of action in the alternative to their Breach of Contract and Breach of Warranty claims (Counts Four and Five) on behalf of themselves and the Nationwide Class.  In the alternative, Plaintiffs brings this claim on behalf of themselves and the California Subclass.

143.    As alleged in detail above, Defendant's false and misleading advertising caused Plaintiffs and the class to purchase Weight Watchers Memberships and to pay a price premium for these Memberships.

144.    In this way, Defendant received a direct and unjust benefit, at Plaintiffs' expense.

145.    (In the alternative only), due to Defendant's misrepresentations, its contracts with Plaintiffs and other class members are void or voidable.

146.    Plaintiffs and the class seek restitution, and in the alternative, rescission.

147.    For the quasi-contract/unjust enrichment claims, Plaintiffs seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiffs and the subclass as a result of Defendant's unlawful conduct.

## Seventh Cause of Action:

### Negligent Misrepresentation

### (By Plaintiffs and the California Subclass)

148.    Plaintiffs incorporate each and every factual allegation set forth above.

149.    Plaintiffs bring this cause of action on behalf of themselves and members of the California Subclass.

150.    As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiffs and subclass members concerning the existence and/or nature of the discounts and savings advertised.

151.    These representations were false.

152.    When Defendant made these misrepresentations, it knew or should have known that they were false.  Defendant had no reasonable grounds for believing that these representations were true when made.

153.    Defendant intended that Plaintiffs and subclass members rely on these representations and Plaintiffs and subclass members read and reasonably relied on them.

154.    In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy new multimonth Weight Watchers Memberships.

155.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and California subclass members.

156.    Plaintiffs and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have signed up for New Multimonth Memberships if they had known that the representations were false, (b) they overpaid for the New Multimonth Memberships because the Memberships were sold at a price premium due to the misrepresentation, and /or (c) they did not receive the discounts they were promised, and received Memberships with market values lower than the promised market values.

157.    For the negligent misrepresentation claims, Plaintiffs seek all damages available including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiffs and the subclass as a result of Defendant's unlawful conduct.

**Eighth Cause of Action:**

**Intentional Misrepresentation**

**(by Plaintiffs and the California Subclass)**

158.    Plaintiffs incorporate each and every factual allegation set forth above.

159.    Plaintiffs bring this cause of action on behalf of themselves and members of the California Subclass.

160.    As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiffs and California Subclass members concerning the existence and/or nature of the discounts and savings advertised.

161.    These representations were false.

162.    When Defendant made these misrepresentations, it knew that they were false at the time that it made them and/or acted recklessly in making the misrepresentations.

163.    Defendant intended that Plaintiffs and California subclass members rely on these representations and Plaintiffs and California subclass members read and reasonably relied on them.

164.    In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy new multimonth Weight Watchers Memberships.

165.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and California subclass members.

166.    Plaintiffs and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the New Multimonth Memberships if they had known that the representations were false, (b) they overpaid for the New Multimonth Memberships because the Memberships were sold at a price premium due to the misrepresentation, and /or (c) they did not receive the discounts they were promised, and received Memberships with market values lower than the promised market values.

167.    For the intentional misrepresentation claims, Plaintiffs seek all damages available including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiffs and the subclass as a result of Defendant's unlawful conduct.

**VII.   Relief.**

168.    Plaintiffs seek the following relief for themselves and the class and subclass:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiffs and the proposed class;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

## VIII.  Demand for Jury Trial.

169.  Plaintiffs demand the right to a jury trial on all claims so triable.

Dated:  April 16, 2025                                    Respectfully submitted,

By: */s/ Christin Cho*
Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiffs*