1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   P. CRAIG CARDON, Cal Bar No. 168646
2  ccardon@sheppardmullin.com
   KEVIN MURPHY, Cal Bar No. 346041
3  kemurphy@sheppardmullin.com
   1901 Avenue of the Stars, Suite 1600
4  Los Angeles, California  90067-6017
   Telephone:   (310) 228-3700
5  Facsimile:   (310) 228-3701

6  ABBY H. MEYER, Cal Bar No. 294947
   ameyer@sheppardmullin.com
7  650 Town Center Drive, 10th Floor
   Costa Mesa, California 92626-1993
8  Telephone:  714.513.5100
   Facsimile:   714.513.5130
9
   *Attorneys for Defendant*
10 WW International, Inc.

11

12                    UNITED STATES DISTRICT COURT

13                    CENTRAL DISTRICT OF CALIFORNIA

14

15 DARREN TODD, on behalf of herself        Case No. 5:25-cv-00926-KK-SHK
   individually and all others similarly
16 situated,                                *Hon. Kenly Kiya Kato*

17          Plaintiff,                       **DEFENDANT WW
                                             INTERNATIONAL INC.'S NOTICE
18        v.                                 OF MOTION AND MOTION TO
                                             DISMISS PLAINTIFF'S CLASS
19 WW INTERNATIONAL, INC.,                   ACTION COMPLAINT;
                                             MEMORANDUM OF POINTS AND
20          Defendant.                       AUTHORITIES IN SUPPORT
                                             THEREOF**
21
                                             *Filed concurrently with Declaration of
22                                           Kevin Murphy, Declaration of Pinal
                                             Bhatt, and [Proposed] Order*
23
                                             Date:       January 29, 2026
24                                           Time:       9:30 a.m.
                                             Ct. Rm.:    3
25

26

27

28

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on January 29, 2026, at 9:30 a.m., or as soon thereafter as the Motion may be heard in the above-entitled court, located at 3470 Twelfth Street, Riverside, CA 92501-3801, Defendant WW International Inc. ("WW") will, and hereby does, move the Court for an order dismissing this action in its entirety with prejudice and without leave to amend pursuant to Federal Rule of Civil Procedure 12(b)(6).

WW moves to dismiss Plaintiff Darren Todd's Class Action Complaint under Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiff fails to state a claim upon which relief can be granted. Specifically, the Court should dismiss all of Plaintiff's claims because the Complaint (1) fails to allege a cognizable legal theory and (2) fails to allege sufficient facts to constitute a cause of action against WW.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on November 5, 2025. (Declaration of Kevin Murphy, ¶ 2.) Counsel for WW, Kevin Murphy and Abby Meyer, and counsel for Plaintiff, Simon Franzini and Martin Brenner, participated in the conference. (*Id.*) The conference occurred via Zoom video call and lasted approximately 15 minutes.  (*Id.*) Counsel discussed each ground for WW's motion to dismiss and were not able to resolve any of the issues. (*Id.*)

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Kevin Murphy, the Declaration of Pinal Bhatt, and all pleadings and papers in the Court's file, the record and files herein, and upon such oral argument as may be made at the hearing on the Motion and such other evidence as may be admitted at the time of the hearing on the Motion.

1  Dated: November 14, 2025

2

3                            SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

4

5                            By      _____/s/ Craig Cardon_____

6                                    P. CRAIG CARDON
                                     ABBY H. MEYER
7                                    KEVIN MURPHY

8
                                     *Attorneys for Defendant*
9                                    WW International, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

I.    INTRODUCTION ................................................................................ 1

II.    FACTUAL BACKGROUND .............................................................. 2

III.    REQUEST FOR JUDICIAL NOTICE ............................................... 4

IV.    LEGAL STANDARD ......................................................................... 5

V.    THE COMPLAINT SHOULD BE DISMISSED ................................ 5

    A.    Plaintiff's Fraud-Based Claims Fail The Reasonable Consumer Test Because WW Did Not Falsely Advertise Prices ............................ 5

        1.    WW did not represent that the 3-month plan was offered at a discount compared to its former price ....................................... 6

        2.    WW did not represent that it was offering the 3-month plan for a limited time ................................................................ 10

    B.    Plaintiff's Other Claims Should Be Dismissed Because They Are Premised On The Same Misinterpretations Of The Pricing Page ........ 11

    C.    Plaintiff's Claims Fail For Additional, Independent Reasons .............. 13

        1.    Plaintiff's fraud-based claims do not satisfy Rule 9(b) with respect to the alleged time-limited sale ....................................... 13

        2.    Plaintiff does not plausibly allege reliance or injury for her fraud-based claims ................................................................ 17

        3.    Plaintiff's FAL, UCL, CLRA, and unjust enrichment claims should be dismissed to the extent they seek disgorgement or restitution ....................................................... 18

VI.    CONCLUSION .................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Andren v. Alere, Inc.*
    207 F. Supp. 3d 1133 (S.D. Cal. 2016) ................................................................ 15

*In re Apple Processor Litig.*
    2023 WL 5950622 (9th Cir. Sept. 13, 2023) ...................................................... 18

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) .............................................................................................. 5

*Audrey Heredia v. Sunrise Senior Living LLC*
    2021 WL 819159 (C.D. Cal. Feb. 10, 2021) (Staton, J.) .................................... 19

*Balistreri v. Pacifica Police Dep't*
    901 F.2d 696 (9th Cir. 1988) ................................................................................ 5

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007) .............................................................................................. 5

*Bibbs v. Amazon.com, Inc.*
    2024 WL 4744035 (C.D. Cal. Aug. 22, 2024) (Kato, J.) ................................... 18

*Bodenburg v. Apple Inc.*
    146 F.4th 761 (9th Cir. 2025) .................................................................. 4, 12, 13

*Branca v. Nordstrom, Inc.*
    2015 WL 1841231 (S.D. Cal. Mar. 20, 2015) ...................................................... 9

*Camasta v. Jos. A. Bank Clothiers, Inc.*
    761 F.3d 732 (7th Cir. 2014) .............................................................................. 16

*Carvalho v. HP, Inc.*
    2022 WL 2290595 (N.D. Cal. June 24, 2022) .................................................... 12

*Chebul v. Tuft & Needle, LLC*
    2024 WL 5257021 (C.D. Cal. Oct. 9, 2024) ...................................................... 20

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*
    65 F. Supp. 3d 840 (N.D. Cal. 2014) .................................................................... 5

*Clevenger v. Welch Foods Inc.*
    2022 WL 18228288 (C.D. Cal. Dec. 14, 2022) (Carney, J.)........................ 18, 19

*Diaz v. Georgia Pac. Corrugated LLC*
    2022 WL 20689543 (C.D. Cal. Oct. 27, 2022) (Gee, J.) ................................... 19

*Drake v. Toyota Motor Corp.*
    2021 WL 2024860 (C.D. Cal. May 17, 2021) (Blumenfeld, J.) ........................ 19

*Elizabeth M. Byrnes, Inc. v. Fountainhead Com. Cap., LLC*
    2021 WL 5507225 (C.D. Cal. Nov. 24, 2021) (Pregerson, J.).......................... 19

*Franckowiak v. Scenario Cockram USA, Inc.*
    2020 WL 9071697 (C.D. Cal. Nov. 30, 2020) (Walter, J.)............................... 19

*Frenzel v. AliphCom*
    76 F. Supp. 3d 999 (N.D. Cal. 2014)........................................................... 14, 15

*Garza v. Spectrum Brands Pet LLC*
    760 F. Supp. 3d 1039 (E.D. Cal. 2024) ............................................................ 5

*Gill v. Chipotle Mexican Grill, Inc.*
    2025 WL 1443767 (C.D. Cal. May 19, 2025) (Slaughter, J.) ........................... 20

*Goins v. Your Fin. Res., Inc.*
    2006 WL 8455353 (S.D. Cal. Sept. 14, 2006) ................................................. 17

*Guzman v. Polaris Indus. Inc.*
    49 F.4th 1308 (9th Cir. 2022) ............................................................. 18, 19, 20

*Hammerling v. Google LLC*
    615 F. Supp. 3d 1069 (N.D. Cal. 2022).......................................................... 17

*Hirlinger v. WP Co. LLC*
    2024 WL 2941630 (N.D. Cal. June 10, 2024) ................................................. 4, 9

*Kearns v. Ford Motor Co.*
    567 F.3d 1120 (9th Cir. 2009) ...................................................................... 13, 14

*Key v. Qualcomm Inc.*
    129 F.4th 1129 (9th Cir. 2025)......................................................................... 20

*Loomis v. Slendertone Distribution, Inc.*
    420 F. Supp. 3d 1046 (S.D. Cal. 2019) ............................................................. 4

-v-

*Marks v. United Parks & Resorts, Inc.*
   2025 WL 2767941 (S.D. Cal. Sept. 26, 2025) ............................................. 15, 16

*McDonald v. Gen. Motors LLC*
   2024 WL 1601851 (C.D. Cal. Jan. 3, 2024) (Kato, J.) ..................................... 14

*Mewawalla v. Middleman*
   601 F. Supp. 3d 574 (N.D. Cal. 2022) ................................................................ 17

*Moody v. Hot Topic, Inc.*
   2023 WL 9511159 (C.D. Cal. Nov. 15, 2023) ............................................. 14, 15

*Moore v. Trader Joe's Co.*
   4 F.4th 874 (9th Cir. 2021) ................................................................... 5, 6, 11

*People v. Superior Ct. (J.C. Penney Corp.)*
   34 Cal. App. 5th 376 (2019) ................................................................................ 12

*Phillips v. Brooklyn Bedding LLC*
   2024 WL 2830663 (N.D. Cal. Mar. 28, 2024) ................................................... 20

*Poe v. Nw. Mut. Life Ins. Co.*
   2022 WL 2046190 (C.D. Cal. Apr. 20, 2022) (Anderson, J.) ........................... 19

*Ruiz v. Bradford Exch., Ltd.*
   153 F.4th 907 (9th Cir. 2025) .............................................................................. 18

*Schertzer v. Samsonite Co. Stores, LLC*
   2020 WL 4281990 (S.D. Cal. Feb. 25, 2020) ..................................................... 16

*Smith v. United Seating & Mobility L.L.C.*
   2024 WL 4441082 (C.D. Cal. Sept. 11, 2024) (Slaughter, J.) ........................... 19

*Sonner v. Premier Nutrition Corp.*
   971 F.3d 834 (9th Cir. 2020) ......................................................................... 18, 19

*Taylor v. Sam's W., Inc.*
   2020 WL 12947973 (C.D. Cal. Dec. 4, 2020) (Fischer, J.) .............................. 19

*United States v. Ritchie*
   342 F.3d 903 (9th Cir. 2003) ................................................................................. 4

*Waldron v. Jos. A. Bank Clothiers, Inc.*
   2013 WL 12131719 (D.N.J. Jan. 28, 2013) ....................................................... 16

# I.    <u>INTRODUCTION</u>

The Complaint should be dismissed.  A higher cost for greater flexibility is a longstanding and well understood concept, whether it is paying a higher rate for a hotel room to cancel close to check in or a lock-in period for a newspaper subscription, or even a weight-loss plan subscription.

But Plaintiff here unreasonably and unrealistically misconstrues Defendant WW International, Inc.'s ("WW") pricing plan options in an attempt to make them fit a theory that WW falsely represented limited-time discounts.  Plaintiff alleges that she saw and purchased a 3-month weight-loss subscription plan from WW for $15 per month, rather than for the plan's regular price of $23 per month.  Plaintiff asserts that this discount was false and misleading because the 3-month plan was never offered for $23 per month for the first three months and because the discount was always available. Based on this, she asserts claims for intentional and negligent misrepresentation, breach of contract and warranty, unjust enrichment, and violation of various California consumer protection statutes.  Plaintiff's cynical theory, when applied to the wide array of businesses which offer lower rates for longer subscription terms, would deprive consumers of the very real benefit of paying a lower price for an annual LA Times subscription or an annual Netflix subscription over the higher price for the same period of a monthly subscription without the lock-in period. Plaintiff's theory is patently anti-consumer.

Contrary to her conclusory statements, and as more fully demonstrated by the materials referenced in the Complaint and judicially noticed here, WW never represented that the 3-month plan she purchased was subject to a limited-time discount based on the plan's former price.  Rather, WW unambiguously compared the price of a then available 3-month subscription plan with the price of WW's then available standard 1-month subscription plan, which is not illegal, false, or misleading.   There is nothing deceptive about offering a lower rate for a longer commitment.  Because Plaintiff's entire case is built on this flawed premise, all of her

claims must be dismissed.

Plaintiff's claims fail for other reasons as well.  Plaintiff fails to satisfy Rule 9(b) with respect to her allegation that WW offered a time-limited sale.  She also cannot plausibly allege reliance or injury based on WW's representations: Plaintiff is a repeat customer of WW; before her September 30, 2024, purchase, she had purchased two other weight-loss plans from WW.  Thus, when she visited WW's website on September 30, 2024, to purchase a plan for a third time, she intended to do so regardless of WW's representations.  Finally, the Court does not have equitable jurisdiction over Plaintiff's request for restitution and disgorgement because Plaintiff has an adequate remedy at law, money damages.  Indeed, it is hard to imagine a situation where money damages are not adequate when the claim is predicated upon too much.  For these reasons and as more fully explained below, WW respectfully requests that the Court grant the motion and dismiss the Complaint.

## II.    FACTUAL BACKGROUND

WW provides weight-loss plans to help individuals lose weight.  (Compl. ¶¶ 8, 21.)  On its website, www.weightwatchers.com (the "Website"), WW offers various automatically renewing subscription-based plans.  *Id.*   The plans vary by their commitment period and price.  (Declaration of Pinal Bhatt ["Bhatt Decl."] ¶ 2.)  For example, WW may offer 1-month, 3-month, and 10-month commitment plans at the same time. (*Id.*; Compl. ¶ 22.)  A user that purchases the 3-month plan commits to paying a locked-in rate for the first three months of the plan that is less than what they would pay if they purchased the automatically renewing 1-month plan, which only locks them into that first month.  (Bhatt Decl. ¶ 2.)  Similarly, a user that purchases the 10-month plan commits to paying a locked-in rate for the first ten months that is less than what they would pay if they purchased the 3-month or 1-month plans for shorter lock-in periods.  After the third month (for the 3-month plan) or the tenth month (for the 10-month plan), the plan automatically renews on a monthly basis and a user is charged at the standard 1-month plan rate each month.  (*Id.*)  In other words,

the customer pays additional consideration for a shorter plan in exchange for the greater flexibility of being able to cancel it after a shorter period of time. WW discloses all of this in multiple places on the webpage where users select their plan (hereinafter, the "Pricing Page"). (*Id.* ¶¶ 4-13, Ex. A.)

Plaintiff is quite familiar with WW and its subscription-based weight-loss plans. Between 2019 and 2024, she purchased three weight-loss subscriptions from WW. (Bhatt Decl. ¶ 3.) On February 1, 2019, Plaintiff purchased a 3-month plan, which she canceled on April 19, 2019, just before the plan was set to automatically renew at the higher 1-month rate. (*Id.*) Then, on February 15, 2022, Plaintiff purchased a 3-month plan for $10 for the first month. (*Id.*) Plaintiff canceled the plan on May 8, 2022. (*Id.*) Most recently, on September 30, 2024, Plaintiff purchased a 3-month plan, which she canceled on March 29, 2025. (*Id.*)

This case concerns Plaintiff's third purchase. She alleges that WW represented on the Pricing Page that the 3-month plan "had a regular price of $23.00 per month, but that she was receiving a limited-time discount and would be charged $15 a month for the first three months." (Compl. ¶ 52.) Based on this, Plaintiff alleges that she understood that WW regularly sold the 3-month plan at $23 per month and that she was receiving a limited-time discount from the former $23 price. (*Id.* ¶ 54.) Plaintiff alleges that WW's representations were false because WW never offered the 3-month plan at $23 per month and the discount she received was not time-limited; rather, it was always available. (*Id.* ¶ 55.) As explained below in Section V.A., Plaintiff's interpretation of the Pricing Page is unreasonable; WW does not represent that the 3-month plan had a former price of $23 per month or that the offer for the 3-month plan was time-limited. Nonetheless, based on her unreasonable (mis)interpretation of the Pricing Page, Plaintiff asserts eight causes of action: (1) violation of California's False Advertising Law ("FAL"); (2) violation of California's Consumer Legal Remedies Act ("CLRA"); (3) violation of California's Unfair Competition Law ("UCL"); (4)

-3-

1   breach of contract; (5) breach of express warranty; (6) unjust enrichment; (7)

2   negligent misrepresentation; and (8) intentional misrepresentation. (*Id.* ¶¶ 74-167.)

## III.   REQUEST FOR JUDICIAL NOTICE

4        WW requests that Court consider the Bhatt Declaration in support of its motion

5   to dismiss, which details (1) the entirety of the Pricing Page that Plaintiff viewed when

6   making her purchase of the 3-month plan and (2) Plaintiff's purchase history.  The

7   Court may do so because this information is incorporated by reference in the

8   Complaint and subject to judicial notice.  Documentation may be "incorporated by

9   reference into a complaint if the plaintiff refers extensively to the document or the

10  document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d

11  903, 908 (9th Cir. 2003).  Additionally, adjudicative facts are subject to judicial notice

12  if such facts "are not subject to reasonable dispute." *Id.* (quotation omitted).

13       First, as to the Pricing Page, it is incorporated by reference in the Complaint

14  and judicially noticeable.  Plaintiff describes and refers to the Pricing Page in her

15  Complaint and includes numerous screenshots of it (but does not submit it in its

16  entirety).  (Compl. ¶¶ 25, 27, 32, 34.)  The Pricing Page representations form the basis

17  of Plaintiff's claims.  The Pricing Page is also judicially noticeable because it is a

18  webpage on a "publicly available website[]." *Loomis v. Slendertone Distribution,*

19  *Inc.*, 420 F. Supp. 3d 1046, 1063 (S.D. Cal. 2019); *Hirlinger v. WP Co. LLC*, 2024

20  WL 2941630, at *4 (N.D. Cal. June 10, 2024) (same).  Thus, the Court should grant

21  WW's request to take judicial notice of the Pricing Page as detailed in and attached

22  to the Bhatt declaration. *See Bodenburg v. Apple Inc.*, 146 F.4th 761, 768 (9th Cir.

23  2025) (holding that district court was correct in taking notice of "three successive

24  iterations of the Apple webpage dispensing information and pricing details for its

25  iCloud+ plans because "the documents were relevant to [the plaintiff's] claims").

26       Second, as to Plaintiff's purchase history, the Court may consider it because it

27  forms the basis of Plaintiff's claims, relating directly to her ability to plausibly allege

28  reliance and injury for her misrepresentation claims and her allegation that she would

like to purchase a weight-loss plan again in the future. (Compl. ¶ 56.) Plaintiff's purchase history is also not subject to reasonable dispute because Plaintiff has knowledge of her purchases of the weight-loss plans.

## IV.    LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of claims asserted in a complaint. A claim should be dismissed where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A plaintiff must do more than allege "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must at least allege sufficient facts "to raise a right to relief above a speculative level." *Id.*, *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, "[t]o survive a motion to dismiss, a complaint must plead sufficient factual matter, accepted as true to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 65 F. Supp. 3d 840, 849 (N.D. Cal. 2014) (cleaned up).

## V.    THE COMPLAINT SHOULD BE DISMISSED

### A.    Plaintiff's Fraud-Based Claims Fail The Reasonable Consumer Test Because WW Did Not Falsely Advertise Prices

Plaintiff's claims for negligent and intentional misrepresentation, and violations of the FAL, CLRA, and UCL, are subject to the reasonable consumer test. *See Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021) (affirming dismissal of complaint and stating that California's consumer protection laws are subject to the reasonable consumer test); *Garza v. Spectrum Brands Pet LLC*, 760 F. Supp. 3d 1039, 1047 (E.D. Cal. 2024) (same as to negligent misrepresentation and intentional misrepresentation claims). The reasonable consumer test is not a free pleading pass for a plaintiff. A plaintiff cannot merely conclude that a reasonable consumer would

understand a statement the same way as a plaintiff claims to have.  And even pleading facts establishing that some consumers would agree with a plaintiff's interpretation is not enough.  A plaintiff must plead facts from which the Court may conclude that there is "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Moore*, 4 F.4th at 881 (quotations omitted).  "This is not a negligible burden." *Id.* at 882.  Again, a "mere possibility" that the representation "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner" will not suffice. *Id.* (cleaned up).  In determining whether a reasonable consumer would be deceived, courts consider "all the information available to consumers and the context in which that information is provided." *Id.*

Plaintiff's unique interpretation of the comparison of three currently offered subscription models as a former price claim is unreasonable.  Plaintiff asserts that she interpreted the Pricing Page as (1) offering the 3-month plan at a discount compared to its former price and (2) representing that the discount was available for a limited time. (Compl. ¶ 52.)  She alleges she was deceived because both representations were false. (*Id.* ¶ 55.)  But as explained below, reasonable consumers would not and could not reasonably interpret these standard subscription period pricing differentials as she did and be deceived.

### 1.    WW did not represent that the 3-month plan was offered at a discount compared to its former price

Plaintiff claims to have believed the 3-month plan was being offered at a discount compared to its former price because the "price was presented … in strikethrough font (~~$23.00~~) next to a purported discount price of $15.00 per month." (Compl. ¶ 52.)  But a review of the entire Pricing Page shows that no reasonable consumer would interpret the Pricing Page as Plaintiff did.  The Pricing Page Plaintiff relied on is reproduced below. (*See also* Bhatt Decl. ¶ 4, Ex. A.)  The page depicts three plans: (a) a 1-month plan with a one-time $20 starter fee and a monthly fee of

$23 per month, which automatically renewed each month; (b) a 3-month plan for $15 per month, which automatically renewed for $23 per month after the first three months; and (c) a 10-month plan for $10 per month, which automatically renewed for $23 per month after the first 10 months. (*Id.*)



WW clearly advertised the plans by comparing them to ***each other***, not to former prices. By presenting the plans in a row of three boxes, a user can easily compare the pricing details for each plan. For example, the 1-month plan states that the "WeightWatchers Membership" costs $23, while the 3-month plan costs $15. (Bhatt Decl. ¶¶ 6-9, Ex. A.) To show a comparison of the two prices, the 3-month plan includes the term "$23" presented in strikethrough font (the cost of the 1-month

plan) directly next to "$15" (the cost of the 3-month plan).  (*Id.*)  Furthermore, the 3-month plan states that a user saves "$44 over 3 months ***when compared to 1-mo plan***." (*Id.* ¶ 10 [emphasis added].)  The nature of the comparison—one length of current offer to another length of current offer—is expressly stated.  But there is more.  Below that text is an information symbol, which if clicked details the full offer terms.  (*Id.*)  The terms explain that the 3-month plan has a discounted monthly fee of $15 per month (as compared to the 1-month plan) and does not include the 1-month plan's $20 starter fee.  (*Id.*)



     Finally, at the bottom of the Pricing Page, the Website again explains that for the 3-month plan, a user will be charged a monthly fee of $15 per month for the first three months as compared to the standard 1-month fee of $23.  (Bhatt Decl. ¶ 13, Ex. A.) The full terms are displayed below.

**10 Months‡**

**PLEASE NOTE FOR THE 10-MONTH COMMITMENT PLAN:** Your account will automatically be charged the discounted monthly fee of $10.00 until the completion of your 10-Month Commitment Plan. Thereafter, you will be charged the standard monthly fee of $23.00 until you cancel. **While you may cancel your subscription at any time, cancellation will not go into effect until the end of your Commitment Plan.** Thereafter, our standard cancellation policy applies. Tax additional where state and local sales tax apply.

**3 Months†**

**PLEASE NOTE FOR THE 3-MONTH COMMITMENT PLAN:** For the first three months, your account will be charged the discounted monthly fee of $15.00. Following the completion of the 3-Month Commitment Plan, you will be charged the standard monthly fee (currently $23.00) until you cancel. **While you may cancel your subscription at any time, cancellation will not go into effect until the end of your Commitment Plan.** Thereafter, our standard cancellation policy applies. Tax additional where state and local sales tax apply.

**1 Month^**

**NO ANNUAL CONTRACT. EASY TO CANCEL.**

**PLEASE NOTE FOR THE 1-MONTH PLAN:** Plans automatically renew at the end of the applicable plan period, and you will be charged at the standard monthly fee (currently $23.00) until you cancel. Tax additional where state and local sales tax apply.

Prepayment of total plan cost required.

In sum, the (1) presentation of the webpage, the (2) representation that the 3-month plan was being "compared to the 1-mo plan," and the (3) multiple disclaimers explaining the terms of the 3-month plan and how it compares to the 1-month plan would lead a reasonable consumer to interpret the "~~$23~~ $15" representation as comparing the 1-month price ($23) to the 3-month price ($15). Plaintiff's contrary interpretation of "~~$23~~ $15" as comparing the 3-month plan's former price to a discount price is patently unreasonable in light of the express disclosures and overall context, and, as a result, her fraud-based claims should be dismissed.[1] *See Hirlinger*, 2024 WL 2941630, at *5-6 (dismissing UCL, FAL, and CLRA claims because strikethrough price for a subscription to a newspaper clearly referred to the future renewal price for the subscription, not a former price); *Branca v. Nordstrom, Inc.*, 2015 WL 1841231, at *8 (S.D. Cal. Mar. 20, 2015) (dismissing UCL, FAL, and CLRA claims because reasonable consumers would interpret "Compare At" price on price tag as a comparable value comparison, not a former price).

---

[1] Plaintiff's interpretation of the Pricing Page also defies commons sense. Plaintiff interprets the $23 strikethrough price to mean that WW previously offered the 3-month plan at $23 per month for the first three months. (Compl. ¶ 36.) But WW already offers the automatically renewing 1-month plan at $23 per month. (Bhatt Decl. ¶ 7, Ex. A.) It would not make any sense for WW to offer the 1-month and 3-month plans for the same price, and reasonable consumers would recognize this.

### 2. WW did not represent that it was offering the 3-month plan for a limited time

Plaintiff alleges that the discount for the 3-month plan was available for a limited time (Compl. ¶ 52), but nothing on the Pricing Page supports Plaintiff's allegation. The only representation relating to a limited-time offer was displayed within the banner at the top of the Pricing Page. (Bhatt Decl. ¶ 5, Ex. A.) It is reproduced below.



As shown, the offer specifies that it is "Just $10/month." (*Id.*) Reasonable consumers would interpret this to mean that the offer applies to the 10-month plan because the Pricing Page advertised the 10-month plan for $10 per month, as depicted below. And that offer did indeed expire the next day.



-10-

1    The 3-month plan, on the other hand, was advertised at $15, so reasonable consumers
2    would understand that the limited-time offer did not apply to that plan.  In addition,
3    the offer states that it applies "[w]ith select plan purchase," and it includes a link to
4    the "Offer terms." (*Id.*)  A user who clicks on the link is presented with the following
5    text box, which explicitly states that the offer applies to the 10-month plan: "Get a
6    waiver of our Starter Fee and pay a discounted rate of just $10 a month for your first
7    10 months when you purchase a Weightwatchers *10-Month Commitment Plan*." (*Id.*
8    ¶ 5 [emphasis added].)  No reasonable consumer would be misled into believing that
9    the offer, expressly applicable only to a $10 plan, applied to the $15 three-month plan.
10   *See Moore*, 4 F.4th at 881.  Plaintiff's claims should be dismissed.



### B.    Plaintiff's Other Claims Should Be Dismissed Because They Are Premised On The Same Misinterpretations Of The Pricing Page

26   Plaintiff's unreasonable interpretation of the Pricing Page is fatal to her
27   remaining claims:

28

***Section 17501 claim.***  Plaintiff's claim for violation of California Business and Professions Code Section 17501 fails because the 3-month plan purchased by Plaintiff was not advertised using a former price comparison for that plan.  Section 17501 only applies to former prices: "No Price shall be advertised as a former price of any advertised thing … ."  Cal. Bus. & Prof. Code § 17501.  Because no former price comparison is made, Section 17501 is not triggered and Plaintiff cannot seek or obtain relief under that statute.  Accord, *Carvalho v. HP, Inc.*, 2022 WL 2290595, *5 (N.D. Cal. June 24, 2022) (dismissing Section 17501 claim because a disclaimer at the bottom of the defendant's website established that the strikethrough prices were MSRPs and not former prices).[2]

***Contract claims***.  Plaintiff's claims for breach of contract and breach of express warranty fail because, contrary to Plaintiff's allegations, WW did not promise that the 3-month plan had a former price of $23.  *See Bodenburg*, 146 F.4th at 768 (holding that a plaintiff's subjective belief "does not alter" a "contract's clear language").  As stated, WW promised to provide Plaintiff the 3-month plan at a rate of $15 per month for the first three months, which was $8 less than the 1-month rate of $23.  (Bhatt Decl. ¶¶ 9-10, Ex. A.)  Plaintiff does not allege that WW failed to provide the 3-month plan at the $15 rate or that the $15 rate was not $8 less than the 1-month rate; thus, WW did not breach the contract or warranty.

***Unjust enrichment.***  Plaintiff's unjust enrichment claim fails because she alleges WW was unjustly enriched based on its alleged "false and misleading

---

[2]  The theory that a comparison between three currently offered plans of different subscriptions terms triggers Section 17501, would push this already teetering statute into the realm of being constitutionally void.  Indeed, the California Court of Appeals has already acknowledged that the statute "bans a considerable amount of commercial speech under the First Amendment."  *See People v. Superior Ct. (J.C. Penney Corp.)*, 34 Cal. App. 5th 376, 397-98 (2019).  Plaintiff's unique application of it to restrict the ability to compare between different existing subscription plans surely pushes that use of 17501 into a realm prohibited by the First Amendment.

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT

advertising." (Compl. ¶ 143.) But for all the reasons explained above, WW's advertising on the Pricing Page was neither false nor misleading. This claim is accordingly subject to dismissal as well.

### C. **Plaintiff's Claims Fail For Additional, Independent Reasons**

#### 1. *Plaintiff's fraud-based claims do not satisfy Rule 9(b) with respect to the alleged time-limited sale*

A claim that "sounds in fraud" is subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (quotation omitted). Here, Plaintiff's claims for intentional misrepresentation, negligent misrepresentation, unjust enrichment, and violations of the FAL, CLRA, and UCL sound in fraud. Each claim is premised on the same "unified course of fraudulent conduct" (*id.*), namely that WW allegedly falsely advertised a limited time-discount based on a former price. (Compl. ¶¶ 77, 80, 91, 108, 110, 112, 143, 150, 160.) Thus, Plaintiff's claims are subject to Rule 9(b). *See Kearns*, 567 F.3d at 1127 ("Because Kearns's TAC alleges a unified fraudulent course of conduct, his claims against Ford are grounded in fraud.").

Under Rule 9(b), a plaintiff must allege the "'who, what, when, where, and how' of the misconduct charged." *Kearns*, 567 F.3d at 1124. The allegations must "be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* (cleaned up). Consistent with this, courts hold that a plaintiff who alleges that a defendant's representations were deceptive must specify **what** those representations specifically stated and **why** they were false. *Id.* at 1126 (affirming dismissal of CLRA and UCL claims because plaintiff failed to allege "what the television advertisements or other sales material specifically stated" or "when [the plaintiff] was exposed to them or which ones he found material"); *Bodenburg*, 146 F.4th at 771 (explaining a plaintiff must set forth "why" a representation is false).

Here, Plaintiff fails to allege with particularity (1) what the time-limited representation she relied on specifically stated and (2) why it was false.[3]

**First**, Rule 9(b) requires that Plaintiff "***specifically state[]***" the representation that she relied on.  *Kearns*, 567 F.3d at 1126 (emphasis added).  Rather than meet her pleading obligation, Plaintiff leans on platitudes, alleging generally that she relied on WW's "representations that the sale was time-limited and expiring soon" (Compl. ¶ 53), that she was "receiving a limited-time discount" (*id.* ¶ 52), and that "the Memberships were being offered … for a limited time" (*id.* ¶ 53).  These allegations are not sufficient under applicable case law.  Her failure to specifically identify the representations that she relied on subjects her fraud-based claims to dismissal.  *See McDonald v. Gen. Motors LLC*, 2024 WL 1601851, at *4 (C.D. Cal. Jan. 3, 2024) (Kato, J.) (dismissing misrepresentation claim under Rule 9(b) because the plaintiff failed to allege "what the false statements were" in the marketing materials she relied on); *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1014 (N.D. Cal. 2014) (holding that plaintiff's allegation that she reviewed "marketing materials and representations" was insufficient under Rule 9(b)).

Such was the outcome in an analogous case where Judge Bernal dismissed a complaint because the plaintiffs failed to allege what the time-limited representations they relied on specifically stated.  *See Moody v. Hot Topic, Inc.*, 2023 WL 9511159 (C.D. Cal. Nov. 15, 2023).  There, like here, the plaintiffs alleged that they "read and relied on representations" on the defendant's website that purported to advertise time-limited discounts based on a former price.  *Id.* at *2, *7.  The plaintiffs did "not specify which specific misleading statements they were exposed to or found material during their purchases."  *Id.* at *7.  As a result, Judge Bernal dismissed the complaint.

---

[3] WW does not here argue that Plaintiff fails to satisfy Rule 9(b) with respect to her theory the 3-month plan had a former price of $23.  However, as explained in Section V.A., Plaintiff's interpretation that the Pricing Page advertised that the 3-month plan had a former price of $23 is unreasonable and fails the reasonable consumer test.

Similarly, in *Marks v. United Parks & Resorts, Inc.*, 2025 WL 2767941 (S.D. Cal. Sept. 26, 2025), the plaintiff alleged that the defendant represented that amusement park tickets were on sale for a "limited time," but the tickets were always available at a discounted price. *Id.* at *5. The district court dismissed the plaintiff's claim because she failed to "specify when the purported promotion began or ended, leaving the timing of the challenged sale unclear." *Id.*[4] So too here. As shown above, Plaintiff does not allege what the time-limited representation she relied on specifically stated, and thus her fraud-based claims should be dismissed.[5]

To the extent Plaintiff argues that the screenshots of advertisements for time-limited sales from 2022-2024 in the Complaint are sufficient to satisfy Rule 9(b), she is mistaken. Judge Bernal rejected the same argument in *Moody*, reasoning that the plaintiffs there failed to allege whether they saw the screenshots of other advertisements and relied on them. *See Moody*, 2023 WL 9511159, at *7. Plaintiff has the same shortcoming here: she never alleges she read or relied on those advertisements, and so her claim should be dismissed. *See Frenzel*, 76 F. Supp. 3d at 1014 ("While the complaint references a number of specific statements by Jawbone, it fails to specify which, if any, of these statements [the plaintiff] personally reviewed and relied on."); *Andren v. Alere, Inc.*, 207 F. Supp. 3d 1133, 1141 (S.D. Cal. 2016) (dismissing complaint where plaintiffs "insert[ed] a copy of a web page … concerning the alleged misrepresentations" into the complaint but "did not allege that they ever saw or relied on this web page").

***Second***, Plaintiff alleges that the time-limited representation she relied on was false because the discount for the 3-month plan was "always available." (Compl. ¶

---

[4] The plaintiffs in *Moody* and *Marks* were represented by Plaintiff's counsel.

[5] To the extent Plaintiff is alleging that she relied on the time-limited offer related to the 10-month plan, her reliance on that representation is unreasonable because she purchased the 3-month plan, as explained above in Section V.A.

-15-

55.)  She alleges that her counsel's investigation shows time-limited sales present on the Website on 58 days between 2022 and 2025.  (*Id.* ¶ 28.)  From this, she infers that the representation she relied on must have been false because the Website always advertised a time-limited sale.  (*Id.*)  But to demonstrate falsity, Plaintiff must allege with particularity that the discount for the 3-month plan *she purchased* was always available.  It is not sufficient to rely on unrelated promotions on the Website.  In *Marks*, the district court dismissed the plaintiff's complaint for a similar reason.  The court reasoned that although the plaintiff alleged the amusement park tickets were always on sale, she did not "sufficiently allege facts surrounding the timing of the sale *she relied on*."  *Marks*, 2025 WL 2767941, at *5 (emphasis added); *see also Schertzer v. Samsonite Co. Stores, LLC*, 2020 WL 4281990, at *5 (S.D. Cal. Feb. 25, 2020) (dismissing complaint in false discount case because the plaintiff did not allege "that her counsel's investigation revealed that the very Suitcase she purchased had not been sold at [the regular price]").

Moreover, the mere fact that the Website had "frequent sales of various items [over a three-year period] does not support an inference that those sales were fraudulent or deceptive" as to Plaintiff's 3-month plan.  *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 738 (7th Cir. 2014) (affirming dismissal of complaint because although the plaintiff alleged that the defendant "offered a number of sales promotions to its customers over a two-year period," he did "not show a constant or perpetual sale of any particular merchandise").  Indeed, "[i]t is common practice for retail marketing to advertise promotions and sales events throughout any given year."  *Waldron v. Jos. A. Bank Clothiers, Inc.*, 2013 WL 12131719, at *3 (D.N.J. Jan. 28, 2013).  Plaintiff also does not allege the specifics of her counsel's investigation, such as how her counsel determined which days they would review or whether the screenshots collected from the WayBack machine are for unique dates (versus multiple for the same date).  Plaintiff thus fails to allege with particularity why the time-limited representation she purports to have relied on was false.

Accordingly, Plaintiff's intentional and negligent misrepresentation, unjust enrichment, FAL, CLRA, and UCL claims should be dismissed under Rule 9(b) to the extent they are premised on WW offering a time-limited sale.

### 2. *Plaintiff does not plausibly allege reliance or injury for her fraud-based claims*

Even if Plaintiff plausibly alleged that WW falsely advertised a limited-time discount based on a former price, Plaintiff's fraud-based claims would still fail because she cannot plead reliance or injury.  Plaintiff failed to apprise the Court that on two prior occasions, she previously purchased multi-month weight-loss plans from WW.  (Bhatt Decl. ¶ 3.)  She also omitted that she canceled the plans shortly after the plans converted to the standard monthly rate, indicating that she is familiar with the pricing and cost of WW plans.  (*Id*.)  Her use of different usernames and email addresses to sign up for the plans (*id.*) evidently was meant to ensure that she would not be excluded from the lower, multi-month rates.  These facts demonstrate that when Plaintiff visited the Website on September 30, 2024, to sign up for a multi-month plan for the *third time*, she intended to purchase a plan regardless of WW's representations.  *Cf. Goins v. Your Fin. Res., Inc.*, 2006 WL 8455353, at *4 (S.D. Cal. Sept. 14, 2006) (explaining that because the plaintiff was "a frequent customer" it was "highly unlikely that [she] relied on Defendants advertising" when entering into the transaction with the defendant).  In light of this, Plaintiff's allegations that she relied on WW's representations and was injured by purchasing the 3-month plan are not plausible, and her claims for intentional misrepresentation, negligent misrepresentation, and violations of the FAL, UCL, and CLRA must therefore be dismissed.  *See Mewawalla v. Middleman*, 601 F. Supp. 3d 574, 601 (N.D. Cal. 2022) (dismissing false and negligent misrepresentation claim for failure to allege reasonable reliance); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1083–84 (N.D. Cal. 2022) (dismissing consumer protection claims, such as UCL and CLRA, for failure to allege reliance).

### 3. Plaintiff's FAL, UCL, CLRA, and unjust enrichment claims should be dismissed to the extent they seek disgorgement or restitution

In order to seek equitable relief in federal court, plaintiffs must plausibly allege that they lack an adequate remedy at law. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1311 (9th Cir. 2022); *Ruiz v. Bradford Exch., Ltd.*, 153 F.4th 907, 912 (9th Cir. 2025). In *Sonner*, the Ninth Circuit affirmed a district court's dismissal of a plaintiff's claims for equitable restitution under the CLRA and UCL because the plaintiff failed to allege that she lacked an adequate legal remedy. *Id.* at 844. The plaintiff sought "the same sum in equitable restitution" that she had previously requested in money damages. *Id.* The court failed to see how seeking the "same amount of money" in equitable restitution "for the same harm" demonstrated that money damages were "inadequate or incomplete." *Id.*

After *Sonner*, courts in the Ninth Circuit have required plaintiffs at the pleadings stage to demonstrate that they do not have an adequate legal remedy before seeking equitable relief. *See In re Apple Processor Litig.*, 2023 WL 5950622, at *2 (9th Cir. Sept. 13, 2023) (affirming district court's dismissal of equitable claims under the UCL and CLRA because plaintiffs "were obligated to allege that they had no adequate legal remedy in order to state a claim for equitable relief" but failed to do so). Courts have further held that plaintiffs may not seek equitable remedies in the alternative. *See Clevenger v. Welch Foods Inc.*, 2022 WL 18228288, at *4 (C.D. Cal. Dec. 14, 2022) (Carney, J.) (rejecting "[p]laintiffs' argument that they may proceed on their claims for equitable relief in the alternative" and noting that "this argument has been explicitly rejected by numerous courts post-*Sonner*").[6]

---

[6] WW acknowledges that this Court has held that a plaintiff may seek equitable relief in the alternative. *See Bibbs v. Amazon.com, Inc.*, 2024 WL 4744035, at *5 (C.D.

Here, Plaintiff alleges she is entitled to equitable relief in the form of disgorgement and restitution for her FAL, CLRA, UCL, and unjust enrichment claims. (Compl. ¶¶ 85, 101, 121, 147.)[7] But Plaintiff has an adequate remedy at law: money damages. Plaintiff does not allege that her request for money damages would not provide her with the same monetary relief as disgorgement or restitution. Nor could she. Plaintiff's request for damages for her negligent misrepresentation and intentional misrepresentation claims is "based on the same factual predicate as [her] claim for restitution and seek[s] the same relief"—return of the price premium she paid for the 3-month plan. *Audrey Heredia v. Sunrise Senior Living LLC*, 2021 WL 819159, at *4 (C.D. Cal. Feb. 10, 2021) (Staton, J.).

While Plaintiff alleges that damages are inadequate because her legal claims are harder to prove and less certain, (Compl. ¶¶ 63-65), this isn't sufficient to avoid *Sonner*. As Judge Carney explained in *Clevenger*, "mere differences in proof between [] claims" do not render a remedy inadequate. 2022 WL 18228288, at *5. This is because under *Sonner* the focus is on the "relief that could possibly be afforded under a claim, as opposed to possible hurdles the plaintiff might face in achieving that relief." *Id.* For example, in *Guzman*, the plaintiff had no ability to prove his CLRA damages claim because it was time barred, yet the Ninth Circuit still held that it did

_____

Cal. Aug. 22, 2024) (Kato, J.). WW respectfully requests that the Court reconsider its reasoning in light of the numerous judges in this district who have held the opposite. *See Smith v. United Seating & Mobility L.L.C.*, 2024 WL 4441082, at *6 (C.D. Cal. Sept. 11, 2024) (Slaughter, J.); *Franckowiak v. Scenario Cockram USA, Inc.*, 2020 WL 9071697, at *3 (C.D. Cal. Nov. 30, 2020) (Walter, J.); *Drake v. Toyota Motor Corp.*, 2021 WL 2024860, at *7 (C.D. Cal. May 17, 2021) (Blumenfeld, J.); *Taylor v. Sam's W., Inc.*, 2020 WL 12947973, at *2 (C.D. Cal. Dec. 4, 2020) (Fischer, J.); *Diaz v. Georgia Pac. Corrugated LLC*, 2022 WL 20689543, at *3 (C.D. Cal. Oct. 27, 2022) (Gee, J.); *Poe v. Nw. Mut. Life Ins. Co.*, 2022 WL 2046190, at *4 (C.D. Cal. Apr. 20, 2022) (Anderson, J.); *Elizabeth M. Byrnes, Inc. v. Fountainhead Com. Cap., LLC*, 2021 WL 5507225, at *5 (C.D. Cal. Nov. 24, 2021) (Pregerson, J.).

[7] At this time, WW does not challenge Plaintiff's prayer for injunctive relief.

not have equitable jurisdiction.  49 F.4th at 1313.  The court focused on whether the CLRA damages claim provided an adequate remedy at law (it did), not whether the plaintiff could prove the CLRA claim (he couldn't because it was time-barred).  *Id.* The Ninth Circuit recently reaffirmed this principle in *Key v. Qualcomm Inc.*, 129 F.4th 1129 (9th Cir. 2025), holding that a plaintiff's "failure to prove" her claim "does not make" a "remedy inadequate." *Id.* at 1142.  District courts have followed this Ninth Circuit jurisprudence.  *See, e.g., Gill v. Chipotle Mexican Grill, Inc.*, 2025 WL 1443767, at *5 (C.D. Cal. May 19, 2025) (Slaughter, J.) ("In summary, Plaintiffs argue that restitution could be higher or easier to obtain than damages. But the court is not persuaded that these allegations reflect an *inadequate* remedy at law."); *Phillips v. Brooklyn Bedding LLC*, 2024 WL 2830663, at *1 (N.D. Cal. Mar. 28, 2024) (rejecting argument that plaintiff had no adequate remedy at law because "his legal claims have different elements that are harder to prove and require additional showings of proof").[8]

Plaintiff has not and cannot explain why damages would not afford her adequate relief.  That her damages claims may be harder to prove or less certain is not grounds for finding that she lacks an adequate remedy at law.  Accordingly, her FAL, CLRA, UCL, and unjust enrichment claims must be dismissed to the extent they seek disgorgement or restitution.

## VI.    CONCLUSION

For the foregoing reasons, WW respectfully requests that the Court dismiss the Complaint.

---

[8] WW acknowledges that some district courts have held that allegations similar to Plaintiff's sufficiently allege an inadequate legal remedy. *See, e.g.*, *Chebul v. Tuft & Needle, LLC*, 2024 WL 5257021, at *3 (C.D. Cal. Oct. 9, 2024). WW contends, however, that these decisions are incorrect in light of the Ninth Circuit's decisions in *Guzman* and *Key*.

1  Dated: November 14, 2025

2                              SHEPPARD, MULLIN, RICHTER &
3                              HAMPTON LLP

4

5                              By                    /s/ Craig Cardon
                                    _____
6                                        P. CRAIG CARDON
7                                        ABBY H. MEYER
                                         KEVIN MURPHY
8
9                                    *Attorneys for Defendant*
                                     WW International, Inc.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## L.R. 11-6.1 CERTIFICATE OF COMPLIANCE

2      The undersigned, counsel of record for Defendant, certifies that this brief

3  contains 6,085 words, which complies with the word limit of L.R. 11-6.1.

4

5  Dated: November 14, 2025

6                              SHEPPARD, MULLIN, RICHTER &
7                              HAMPTON LLP

8

9                      By    _____
                                      */s/ Craig Cardon*
10                                    P. CRAIG CARDON
                                      ABBY H. MEYER
11                                    KEVIN MURPHY

12                                    *Attorneys for Defendant*
13                                    WW International, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28